**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BEVERLY CONYERS, | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:02CV263(PCD) |
| | : | |
| v. | : | |
| | : | |
| R.C. HASSETT, MICHAEL QUINN, | : | |
| BRIAN MAURO, and the | : | |
| CITY OF NEW HAVEN, | : | |
| *Defendants.* | : | MARCH 19, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL DISCLOSURE AND FOR SANCTIONS**

**INTRODUCTION AND FACTUAL BACKGROUND**

This is a civil rights case brought by Beverly Conyers against three police officers and the City of New Haven based on a court-authorized search of her home at 68 Day Street, New Haven, conducted on January 18, 2000. The plaintiff contends that the search warrant violated her rights under the Fourth Amendment and the Connecticut Constitution because it was based on false statements by the three police officer defendants that she was involved in selling marijuana and operating an after-hours liquor establishment and that marijuana had been purchased from her apartment by a Confidential Informant the previous week.

When the police arrived to search the apartment, Ms. Conyers, who was 50 years old at that time, was at home with her ten-year old granddaughter and two other young

1

children that she was caring for. No drugs, no money, or drug paraphernalia of any kind was found in the apartment, with the exception of an empty baggie under a dresser of the bedroom occupied by Ms. Conyers' adult daughter, who was not home at the time.[1] No arrests were made.

At the time the search warrant was obtained and executed, New Haven police were heavily involved in drug interdiction efforts in the neighborhood where Ms. Conyers resides, and in her apartment complex, the Waverly Homes. In fact, Ms. Conyers and other residents had frequently complained to the police about heavy foot traffic and apparent drug dealing associated with a nearby apartment, 86 Day Street.[2]

In this lawsuit, the plaintiff alleges that the three officers, two of whom were affiants on the search warrant affidavit and the third who contributed critical information to it, all acted intentionally or with reckless disregard for the truth in submitting false information to establish probable cause for the search. In particular, the complaint focuses on the following paragraphs of the Affidavit:

> 7. That during the week of 1/05/00 these affiants did met (sic) with a known and reliable informant for the purpose of gathering intelligence information concerning the sales of narcotics within the Waverly Street/Day Street public

---

[1] The police later claimed that this baggie contained marijuana residue, but no arrests were made, nor is there any documentation of any testing of the baggie.

[2] New Haven Police Department records indicate that a number of complaints had been made about 86 Day Street prior to the search, but no complaints were made about Ms. Conyers' address, 68 Day Street.

2

housing complex in the city of new haven, CT. That said informant has provided information in the past that has been proven true and accurate. *This C.I. stated that it had knowledge of a marijuana/after hours liquor operation that was utilizing the address of 68 Day St. to sell large quantities of marijuana and illegal after hours liquor. The C.I. stated that a black male and an older black female that reside at this address sell the marijuana and liquor. The C.I. has been within this address numerous times during the above week as well as in the past and has observed the unknown black male and female in possession of a large quantity of marijuana that was prepackaged for street sale. The C.I. has also observed the young black male make numerous sales of marijuana from the apartment* as well as the rear court yard in the back of the apartment.

Paragraph 9: That during the week of 01/10/00 these affiants spoke with Sgt. Hassett the O.I.C. of the Beaver Hills district which encompasses the Waverly Street/Day Street public housing complex. Sgt Hassett stated that patrol officers assigned to the area regularly chase subjects selling narcotics within the court yard of the Waverly Street housing project into 68 Day Street. Sgt. Hassett stated that *68 Day Street is a known refuge for subjects selling narcotics* in the area.

Paragraph 10: That during the week of 01/12/00 these affiants did meet with the same known and reliable informant for the purpose of making a controlled purchase of marijuana from 68 Day Street, New Haven, CT. That prior to making this controlled purchase of marijuana the informant was searched for both contraband and monies and was found void of both. The C.I. was then issued departmental funds and was directed to the target location which would allow these affiants a clear and unobstructed view of the informant and the target location. *These affiants watched as the informant went directly to 68 Day Street and entered the rear door. After several minutes the C.I. exited the same rear door and went directly to a prearranged location to met (sic) these affiants during which time the C.I. was kept under constant surveillance. That upon meeting these affiants the C.I. handed over a quantity of a green plant-like substance purported to be marijuana. That again the C.I. was searched for both contraband and monies and was found void of both. These affiants did conduct a field test of the green plant-like substance which resulted in a positive reaction for the presence of marijuana,*

3

*this was seized as evidence and will be sent to the state lab for further testing. That during the debriefing the C.I. stated that it knocked on the rear door and inturn was opened by a B/M in his late teens early twenties wearing a black leather jacket with red sleeves who invited the C.I. into the apartment. Once inside the apartment a brief conversation ensued on the quantity of marijuana that was going to be purchased. After the amount was decided the black male went into the kitchen and retrieved the desired amount of marijuana form a large plastic bag that contained numerous smaller bags of marijuana that was located on the kitchen counter. At this time the C.I. handed the black male the departmental funds in exchange for the desired amount of marijuana. After this transaction the C.I. exited the apartment from the same rear door and met these detectives at the prearranged location.*

11. That during the week of 1/12/99 these affiants conducted several surveillances of 68 Day Street, New Haven, CT. During which time these affiants had a clear and unobstructed view of the premise, that these surveillance were conducted during both the day and nighttime hours. During these surveillances *the affiants observed a large amount of both walk up and drive up customers that would arrive and enter through the rear doors. That these customers consisted of both sexes and several different races. That these customers would enter the premise through the rear door, remain for several minutes then exit the same way they entered, then leave in the same manner they arrived. That these affiants did observe several black male subjects enter the rear of 68 Day Street the reappear drinking liquor, these subjects then loitered around the rear door and into the court yard. That these affiants did observe a B/M subject clad in a black leather jacket with red sleeves enter and exit the rear of 68 Day Street several times.*

The search warrant application for 68 Day Street is attached as Exhibit A.

The Plaintiff denies she has ever sold marijuana and insists that she maintains control of her apartment such that no other person could have been selling marijuana from her home as alleged in the search warrant application. *See* Deposition of Beverly Conyers, 9/8/03 TR. pp. 40-41.[3] She also specifically denies that the alleged controlled

---

[3]The transcript pages are attached.

marijuana purchase from her apartment ever took place.

The defendants have produced little evidence to support the statements in the search warrant. For example, they have produced no surveillance logs or other documentation that would support the claim of drug dealers "fleeing" into Ms. Conyers' apartment or the claim that alcohol and drug sales were taking place there.

With respect to the alleged undercover buy, the defendants have produced no *contemporaneous* notes or other documentation to support their claim that there was a controlled drug buy as alleged in the search warrant. They have also failed to provide any documentation that would corroborate the claim that the New Haven Police Department issued any funds to a CI for the purpose of buying drugs from the plaintiff's apartment.

In his deposition, defendant Quinn testified that he and defendant Mauro verbally requested departmental funds from Sergeant Canning for the purpose of making a controlled drug purchase from the plaintiff's apartment. *See* Deposition of Michael Quinn, 9/8/03, TR. pp.. 14-15.[4] Quinn also testified that Sergeant Canning's practice was to mark on a "card" that he had disbursed funds in a certain amount for a particular purpose. Id., pp. 15-17. Quinn further testified that the money was controlled in a "strict" manner, and that if they were unsuccessful in making the controlled purchase of drugs the money would have to be returned to Sergeant Canning and in that case the card would be destroyed.

---

[4] All cited transcript pages are attached.

5

Id., p. 16. Quinn also testified that he would routinely refer to the card that recorded the amount of money and the purpose for which it had been disbursed in order to fill out his paperwork about the controlled purchase at the conclusion of the investigation. Id. p. 20.

In this case, however, the defendants have not produced the "card" or any other documentation to show that Sergeant Canning approved any funds for the purpose of making a controlled purchase at 68 Day St. The only documentation that has been produced are two unsigned pages, bearing a date of January 24, 2000, *six days after* the allegedly illegal entry and search occurred. See Exhibits B and C, attached hereto.[5] Thus, all that these pages prove is that someone filled out a form nearly a week after a search that produced no evidence.

The defendants have also produced a copy of a redacted narcotics log documenting "one black zip-lock bag containing a green plant-like substance" signed in by Michael Quinn on January 12, 2000, at 17:15 hours. *See* Exhibit D, attached. However, there is no contemporaneous documentation linking this item to the plaintiff, or to her apartment. Nor is there any documentation that a field test was performed on this substance to confirm that it actually contained marijuana. Although the narcotics log contains a complaint number, 00-2225, that complaint number was not associated with the plaintiff or her apartment on January 12, 2000. Her name and address do not appear on the bag

---

[5]The CI code and the monetary amounts have been redacted from those pages.

6

used to store the plant-like substance or the cover sheet for that bag, although there are spaces for the suspects name and address on those documents. See Exhibits E and F, attached.

Moreover, defendant Quinn testified that he would *not* have used the plaintiff's address in calling in for a complaint number from the field. TR. p. 57. He also testified that the Complaint number could not be the same as the NEU (Narcotics Enforcement Unit) number but that the number 00-2225 was listed as the NEU number "by mistake." TR., pp. 63-64. [6] This is also suggestive of, although not proof of, an after-the-fact attempt to justify the wrongful search that had occurred.

In sum, none of the documentation establishes either that 1) marijuana was actually purchased from the plaintiff's apartment prior to the preparation of the search warrant affidavit, 2) there actually was a Confidential Informant involved in an undercover purchase from her apartment, or 3) that a Confidential Informant ever provided the disputed information in the affidavit to the police officers involved in preparing the warrant.

It is the plaintiff's contention that the three defendants, who were all actively involved in narcotics interdiction in the area where the plaintiff lived, the Waverly Homes in New Haven, fabricated the entire story about surveillance of narcotics activity in the plaintiff's apartment and the so-called undercover buy by a Confidential Informant to justify

---

[6]See Exhibits E & F

7

searching her apartment, when the real object of their law enforcement activity was actually a different apartment, 86 Day Street, which was a known drug location.

**ARGUMENT**

The government has a privilege to keep the identity of confidential informants secret. "This so-called 'informer's privilege' is intended to encourage citizens to provide information to the Government about criminal activity in furtherance of public safety and effective law enforcement by preserving their anonymity, thereby protecting informants and their families from potential harassment and other serious harms." U.S. v. Saltares, 2004 WL 213154 (S.D.N.Y 2004)  The privilege is not absolute, however. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. 53, 60-61 (1957).

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, supra at 62.

In Roviaro, the Supreme Court balanced a criminal drug possession defendant's

8

need for the testimony of an alleged confidential informant against the government's need to keep the identity of the informant confidential. In deciding that it was error for the court to have allowed the government to refuse to disclose the identity of the confidential informant, the court considered the unique value of the alleged informer's testimony in proving the defendant's claims and defenses, due to his role in procuring the possession of the drugs. The court also noted the Government's use against the defendant of a conversation with the informant, known in the case as "John Doe" while riding in John Doe's car. The Court found it unfair to allow nondisclosure because" [t]he only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show and entrapment." Id. at 64. The Court went on to note that the informer was "the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses." Id.

"The Second Circuit has established a two-pronged test to determine whether a party can pierce the veil of the privilege." Newell v. City of New York, 2003 WL 21361737, 2 (S.D.N.Y. 2003) "To overcome the privilege, the party seeking disclosure has the burden of establishing that the information sought is both relevant and essential to the

9

presentation of his case on the merits, and that the need for disclosure outweighs the need for secrecy." <u>Cullen v. Margiotta</u>, 811 F.2d 698, 715-16 (2d Cir.1987) (citations omitted), *overruled on other grounds,* <u>Agency Holding Corporation v. Malley-Duff & Associates, Inc.</u>,483 U.S. 143 (1987).

This case also implicates the holding in <u>Franks v. Delaware</u> 438 U.S. 154 (1978)

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request. <u>Id</u>. at 155.

<u>Franks</u> is a criminal case, and the relief ordered by the Supreme Court, suppression of the fruits of the warrant, is proper relief for a criminal defendant. Suppression is not the only remedy available for a fourth amendment violation, however. It is well-established that plaintiff can sue government officials for monetary damages to redress a fourth amendment violation. <u>Wilson v. Layne</u>, 526 U.S. 603(1999).

Beverly Conyers is not a criminal defendant. When the warrant to search her apartment was executed, no drugs were found and no one was charged with any crime or arrested. Ms. Conyers is a plaintiff claiming that her constitutional

10

rights were violated because the police officers **lied** about conducting a controlled purchase of marijuana from her apartment and about chasing drug suspects into her apartment and seeing heavy traffic going into and out of her apartment. The testimony of the alleged Confidential Informant is therefore critical to determining the truth of the officer's claims, and to doing justice in this case. The risk of any adverse consequences to the confidential informant is diminished by the passage of four years time since this alleged controlled drug buy and can be minimized by appropriate protective orders. In addition, the disclosure is not made to a criminal defendant, but to an innocent citizen whose home was invaded in error. Thus, there is no threat of "retaliatory violence" against the allege confidential informant. U.S. v. Allen 289 F.Supp.2d 230, 240 (N.D.N.Y. 2003)

The defendants rely on the search warrant to justify their search of plaintiff's home. The search warrant application relies most heavily on the statements of the alleged Confidential Informant (CI) and the alleged controlled marijuana purchase by this CI. Without the information from the CI, the search warrant application lacks sufficient probable cause to grant the search warrant. Therefore, an order of this court granting access to the Confidential Informant, if there ever was one, is essential to plaintiff proving her claim that the search

warrant was obtained using false statements.

The search warrant application is also suspect because of the its striking similarity to another search warrant application made in support of a warrant to search the nearby apartments at 84 and 86 Day Street. See Exhibit G, attached. Reading the two applications side by side, it appears that a few details were changed to personalize the application to the plaintiff, but that otherwise the two applications are identical. This is particularly suspicious since there are no contemporary notes documenting any of the statements attributed to the affiants, Hassett or the C.I.

Furthermore, all of the statements in the search warrant are less credible in light of what was actually found when the search warrant was executed, just days after the alleged drug purchase. Instead of a drug ring, the police found scared children and a grandmother taking care of them. The only item seized was a small bag that allegedly was of the type used for marijuana. This item was found under Beverly Conyers' adult daughter's dresser. This bag was never tested and has not been shown to contain anything at all.

Both the rule from <u>Roviaro</u> for disclosure of the identity of a confidential informer and the <u>Franks</u> rule are satisfied in this case. The plaintiff requires an order that the confidential informant be disclosed because that information is

12

essential to a fair determination of her case. The plaintiff has also made a substantial preliminary showing that false statements were knowingly and intentionally, or with reckless disregard for the truth, was included by the affiants in the warrant affidavit. The allegedly false statements were necessary to the finding of probable cause by the magistrate.

Under the Cullen v. Margiotta test, disclosure of the identity of the alleged Confidential Informant is proper. Considering the first factor, the identity of the C.I. is highly relevant to the plaintiff's case, since a major claim of hers is that the controlled buy supposedly made by the C.I. from her home never took place. This disclosure is also essential, without the opportunity to question this alleged C.I., the plaintiff is unable to prove her case. Considering the second factor, the harm of disclosure can be minimized, by for example ordering the plaintiff's attorney not to disclose the informant's identity, and the harm should be minimal because of the passage of four years time and the fact that the plaintiff is not a criminal, but a grandmother who is not likely to retaliate against anyone. Against this minimal risk of harm, the benefit of this disclosure is that the court is able to get to the truth of this matter and make a just adjudication of the plaintiff's serious claims against the defendants.

**CONCLUSION**

For the reasons cited above, the plaintiff's motion to disclose the identity of the confidential informant should be granted.

By /s/ *signature*

PAUL GARLINGHOUSE
Federal Bar No. ct25143
Her Attorney
129 Church Street, Suite 802
New Haven, CT 06510
Telephone: (203)865-5000
Facsimile: (203)865-2177

14

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, this 19th day of March, 2004, to the following parties and counsel of record:

Martin Echter, Esquire
Office of the Corporation Counsel
165 Church Street
New Haven, CT 06510

_____
PAUL GARLINGHOUSE