UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

BEVERLY CONYERS,  : NO. 3:02CV 263 (AWT) (PCD)
Plaintiff

VS.  :

U.S. DISTRICT COURT
NEW HAVEN, CONN.

R. C. HASSETT, ET AL.  : APRIL 15, 2004
Defendants

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

A. For the reasons set forth herein after the defense herewith respectfully opposes plaintiff's Motion to Compel and for Sanctions.

B. Also, while we believe it is neither necessary nor appropriate in this instance, the defense is prepared to submit any of the information sought by the plaintiff to the Court in camera, if the Court deems it desirable to confirm the representations of the defense.

C. Moreover, if the Court believes that the plaintiff has made-out in writing a prima facie case for disclosure of any of the information we respectfully ask that the Court await full testimony at trial before making a definitive ruling.

D. Should the Court determine to order disclosure of any of the information sought we also ask that such Order be stayed and that an interlocutory appeal be authorized.

E. Lastly, we believe that after reviewing the motion and this opposition it is entirely possible that the Court may wish to have the respective parties supplement the record with Local Rule 56(a)(1) and Local Rule 56(a)(2) Statements (excerpts from sworn depositions or sworn answers to interrogatories of the various

defendants, and other documentation) and treat the matter pending motion and opposition as a motion for summary judgment.

**I.     General nature of the lawsuit.** Two of the individual defendants, New Haven Police Detectives, sought, obtained and participated in the execution of a search warrant at plaintiff's apartment in connection with the sale of illegal substances. The third individual defendant is the Supervisor of the Police District in which the plaintiff's apartment is located and who provided some of the initial information which led to the investigation. The City of New Haven is also a named defendant, albeit only for purposes of indemnification.

Plaintiff claims there was no legal basis for seeking the warrant, in effect asserting no more than that the plaintiff and her attorney do not believe the representations in the warrant application that there had been a "controlled" purchase of marijuana by a confidential informant prior to the seeking of the search warrant.

**II.    Answers to Interrogatories, depositions and responses to requests for production.**

Each of the three individual defendants plus the defendant City of New Haven provided Answers to Interrogatories and Responses to Requests for Production in June 2003. We also produced every document requested, only redacting in a few instances the identity of any confidential informant, the identification number assigned to any such confidential informant, and the amount of money disbursed to any such confidential informant, respectively, in order to

-2-

make a "controlled" narcotics purchase and in order to pay the confidential informant for his or her services.

No motion to compel was made until more than eight (8) months later. The deposition of defendant Michael Quinn was completed in September 2003. No motion to compel additional testimony from defendant Quinn was ever made.

### III. By motion dated March 19, 2004 the plaintiff has moved to compel production of the following information:

**A. Index card and amounts of money disbursed.** "Any and all documents showing the amount of money disbursed for the purpose of making a controlled purchase of narcotics from the plaintiff's apartment, in particular the "index card" prepared by Sergeant Canning when he allegedly issued departmental funds to defendants Mauro and Quinn for the purpose of making that particular controlled purchase."

**B. Monetary amounts disbursed.** "The redacted monetary amounts from the case preparation expenditures form Exhibit B) and the Informant Payment Request form (Exhibit C)."

**C. Informant identifying number.** "The redacted Confidential Informant identifying number from the the [sic] case preparation expenditures form (Exhibit B) and the Informant Payment Request for (Exhibit C)."

**D. Whether confidential narcotic purchasers at two distinct addresses was one and the same person.** " Whether the Confidential Informant referred to in the search warrant application for the Plaintiff's apartment (Exhibit A) is the same

-3-

Confidential Informant referred to in the application for a warrant to search 86 and 84 Day Street. (Exhibit G.)"

E.  **The name of the confidential informant.** "The name of the Confidential Informant who participated in an alleged controlled marijuana purchase from the Plaintiff's apartment."

**IV. Plaintiff also seeks to have the Court order the defense to "pay reasonable costs and fees for the making of this motion, and to sanction the defendant as the court deems appropriate, including payment of the Plaintiff's costs in connection with plaintiff's motion.**

**V. ARGUMENT**

**A. No attorney fees or costs or other sanctions are warranted.**

As discussed infra,

- the plaintiff's motion to compel is untimely,

- the plaintiff's counsel has not fully complied with the local rules predicate to the filing of a motion to compel, i.e., the inclusion of an affidavit, **L . Civ. R. 37(a)2,** and

- plaintiff's counsel expressly waived the disclosure of the "names and identifying information of the confidential informants." **[See Request for Production No. 1, to each defendant.]**

In sum, the defense has not engage in any act or omission which would warrant the imposition of attorney fees, costs or any other sanctions.

-4-

**B. Lack of Timeliness.** We could justifiably object to the plaintiff's motion on grounds of lack of timeliness.

Each of the three individual defendants plus the defendant City of New Haven provided Answers to Interrogatories and Responses to Requests for Production in June 2003.

We also produced every document requested, only redacting in a few instances the identity of any confidential informant, the identification number assigned to any such confidential informant, and the amount of money disbursed to any such confidential informant, respectively, in order to make a "controlled" narcotics purchase and in order to pay the confidential informant for his or her services.

No motion to compel was made until more than eight (8) months later. The deposition of defendant Michael Quinn was completed in September 2003. No motion to compel additional testimony from defendant Quinn was ever made.

Also, as noted above, plaintiff's counsel expressly waived the disclosure of the "names and identifying information of the confidential informants." **[See Request for Production No. 1, to each defendant.]**

The Joint Trial Memorandum was filed in late September 2003.

At one time in the Summer or early Fall of 2003 a verbal request was made by plaintiff's counsel for the monies disbursed in connection with the undercover purchase of narcotics.

However, there has never been a request for disclosure of the identify,

-5-

identity numbers, or other information which might identify any confidential informant. In the September 26, 2003 Joint Trial Memorandum Plaintiff's "Witness List" included "[c]onfidential informant . . ." as number 11. Under "Further proceedings" in the Joint Trial Memorandum the it state,

> Plaintiff seeks disclosure of the name and address of the confidential informant referred to in the application for the search warrant for her home so that this individual may be called to testify and possibly deposed. Plaintiff's counsel will file a motion to order disclosure of the confidential with a memorandum of law within 10 days.

[Joint Trial Memorandum, September 26, 2003, at page 38.]

NOTE: Ordinarily the undersigned would not rely on the delay in filing the motion to compel. I too often need a professional courtesy and the Court's indulgence. I do so, in part in this instance, because of the extreme sensitivity of the identity of a police "confidential informant" and the policy issues discussed infra.

On the other hand, in addition to denying plaintiff's motion due to its lateness, I also respectfully encourage the Court to address the merits of the plaintiff's motion to compel, for two reasons.

First, should there be a subsequent appeal which includes the issue of disclosure of information regarding the confidential informant there will be a complete record plus the Court's views and exercise of its discretion. In this regard, as I discuss elsewhere in this memorandum, while I do not believe it is necessary or appropriate in this particular case I would be prepared to submit the confidential informant's identity to the Court in camera and to be sealed.

Second, I believe in this instance there is no basis whatsoever for disclosure of

-6-

the information sought and accordingly I further believe a clear statement of the law in the context of this civil lawsuit and the particular facts of this case would be a useful clarifying precedent.

**C.   Failure to comply with Local Rules.**  We could also properly object that counsel for the plaintiff has failed to comply with the requirements of the Local Rules that an affidavit of efforts to amicably resolve discovery disputes be filed. **[See Request for Production No. 1, to each defendant.]**

At one time in the Summer or early Fall of 2003 a verbal request was made by plaintiff's counsel for the monies disbursed in connection with the undercover purchase of narcotics.

However, there has never been a request for disclosure of the identify, identity numbers, or other information which might identify any confidential informant.  In the September 26, 2003 Joint Trial Memorandum Plaintiff's "Witness List" included "[c]onfidential informant . . ." as number 11.   Under "Further proceedings" in the Joint Trial Memorandum the it state,

> Plaintiff seeks disclosure of the name and address of the confidential informant referred to in the application for the search warrant for her home so that this individual may be called to testify and possibly deposed. Plaintiff's counsel will file a motion to order disclosure of the confidential with a memorandum of law within 10 days.

[Joint Trial Memorandum, at page 38.]

Again, we ordinarily would not rely on this objection.  It can be easily cured. We do so in this lawsuit solely because of the extreme consequences of exposing, directly or indirectly, the identity of a "confidential informant."

-7-

Also, as with the issue of delay, we encourage this Court to reach the merits of the claim to compel such information, relying on a denial on the merits as well as the procedural defects.

### D. The plaintiff previously waived any claim to the information now being sought.

The plaintiff's lead attorney expressly qualified the requests to each defendant with the phrase "Plaintiff does not object to the redaction of the names and identifying information of the confidential informants." [Each Request for Production No. 1.]

That constitutes a waiver.

While in some instances it is conceivable that subsequent developments would justify a change of heart, there is no justification offered in this case.

Of course, we again encourage this Court to reach the merits of the claim to compel such information, relying on a denial on the merits as well as the procedural defects.

### E. Disclosure of the names or other information identifying or tending to identify any confidential informant is not justified in this case, and is in any event outweighed by prejudice to any such informant and to the defendants.

**Material facts not in dispute.**

1. Defendant Raymond Hassett of the New Haven Department of Police Services is currently a Lieutenant, and at the time of the incident he was a Sergeant and Commander of the Policing District in which the plaintiff's home is located. **[Sworn Answers of Raymond Hassett to Interrogatories.]**

-8-

2. In that capacity defendant Hassett acquired information from other officers and members of the community about sales of illegal substances and other violations of law, in particular of such illegal sales in a housing complex in the vicinity of Days Street and Waverly Street in New Haven. **[Sworn Answers of defendant Raymond Hassett to Interrogatories.]**

3. The complex is a series of small, two-story, garden-style apartments surrounding a central rear courtyard. **[Sworn Answers of Raymond Hassett to Interrogatories; diagram of housing complex; drawing of housing complex prepared by Detective Michael Quinn at meeting with Sgt. Brendan Canning, then Sergeant Raymond Hassett and Detective Brian Mauro.]**

4. Information provided to then Sgt. Hassett regarding illegal activity at the Day Street – Waverly Street complex included the following: that upon the approach of police persons who appeared to be engaged in sales of illegal substances ran into various of the apartments, including but not limited to 68 Day Street. **[Sworn Answers of Raymond Hassett to Interrogatories.]**

5. In late December 1999 or early January 2000 then Sgt. Hassett also received several anonymous telephone calls reporting the sales of illegal substances in the Day Street – Waverly Street complex. **[Sworn Answers of Raymond Hassett to Interrogatories.]**

6. From information routinely available to the Police Department from the quasi-public Housing Authority for the City of New Haven, which owns and manages the Day Street -- Waverly Street housing complex, then Sgt. Hassett

-9-

determined the identities of the then current residents of 68 Day Street, including Beverly Conyers, as well as certain residents at other locations in the complex. **[Sworn Answers of Raymond Hassett to Interrogatories; see also Housing Authority Agreement with Beverly Conyers.]**

7. Defendant Hassett met with members of the Narcotics Enforcement Unit (NEU) of the New Haven Department of Police Services, including Sgt. Brendan Canning, then Supervisor of the NEU, and Detectives Michael Quinn and Brian Mauro, regarding the information he had obtained. **[Deposition of Detective Michael Quinn.]**

8. At that meeting Detective Quinn sketched a rough outline of the housing complex, including apartment units of particular concern because of suspected criminal activities. **[Deposition of Detective Michael Quinn; Diagram.]**

8. At that point in time no searches of 68 Day Street were made, and no arrests were made at that location, there being only articulable suspicion of illegal activity.

9. In coordination with Sgt. Canning, Detectives Quinn and Mauro undertook surveillance of the housing complex, and in particular 68 Day Street. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

10. Detective Quinn had nearly seventeen (17) years experience at the time, including narcotics investigations, training and operations with the NEU, the State Police Statewide Narcotics Task Force, the Federal Bureau of Investigation, and the Federal Drug Enforcement Administration in connection with operations of the

-10-

Statewide Federal Drug Task Force. **[Deposition of Michael Quinn; Sworn Answers of Michael Quinn to Interrogatories.]**

11. Detective Quinn also had experience in the preparation of hundreds of search warrant applications and support of such applications in connection with illegal narcotic activities. **[Deposition of Michael Quinn; Sworn Answers of Michael Quinn to Inerrogatories.]**

12. Detective Mauro had similar, albeit less training and experience. **[Sworn Answers of Brian Mauro to Interrogatories.]**

13. During the week of January 12, 2000 Detectives Quinn and Mauro, while conducting surreptitious surveillance, observed a number of persons enter 68 Day Street and each left shortly after entering, activity not inconsistent with the sale of illegal substances. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

14. Detectives Quinn and Mauro also determined from Police Department records that at least one person showing the address of 68 Day Street and related to Beverly Conyers had a prior history involving illegal narcotics. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant; Case Incident Report No. 53278 concern August 21, 1998 incident involving Tiara Conyer; Police Department computer printout.]**

15. Still, at that point in time no searches of 68 Day Street were made, and no arrests were made at that location, there still being only there being only articulable, albeit somewhat heightened, suspicion of illegal activity.

16. Detectives Quinn and Mauro then determined to further the investigation by initiating a "controlled purchase" of illegal substances at 68 Day Street and they obtained necessary funds from Sgt. Canning. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

17. Detectives Quinn and Mauro enlisted the services of a "confidential informant" (also labeled in the warrant application as "CI" or as "he/she" in order to further protect the CI's gender as well as other indicia of identity) who had provided to Detective Quinn on numerous prior occasions information of criminal activity which had proven to be reliable. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

18. Pursuant to standard training and practice (1) the CI was first checked to be sure he/she had no monies or illegal substances on the CI's person, and (2) the CI was handed the police funds in order to pay for any purchases the CI might be able to make at 68 Day Street. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

19. The Detectives then surreptitiously observed the CI enter the premises at 68 Day Street and leave a short time thereafter, and, without losing sight of the CI the Detectives then met with the CI and obtained from him/her a small black plastic baggie of the type regularly used to package individual small amounts of illegal substances for sale and which the CI advised he/she had purchased inside 68 Day Street. The detectives also searched the CI in order to be certain he/she no longer had the money provided by the officers and that he/she had no other possible illegal

-12-

substances. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

20. Utilizing a standard field test kit known as a "serchie" the Detectives field tested the substance inside the small plastic baggie and determined that it registered positive for marijuana, a substance the sale of which is controlled by law. **[Deposition of Michael Quinn; Application for Search and Seizure Warrant.]**

21. Detective Quinn obtained a Case Incident Number (also labeled a "CN") from the police dispatcher. **[ Deposition of Michael Quinn; Affidavit of Frank Quadrino.]**

22. Pursuant to Police Department practice, the address initially entered into the Police Department computer is "One Union Avenue," the address of the main Police Department Headquarters, rather than the actual address where the undercover purchase was made, so that even most Police Department personnel could not know that a confidential investigation of 68 Day Street was underway. **[Deposition of Michael Quinn; Affidavit of Frank Quadrino.]**

23. Detective Quinn then registered the packet and its contents on a standard Narcotics Log at the front desk at Police Headquarters at One Union Avenue, New Haven, and the entry was routinely initialed by the Sergeant on Front Desk Duty at the time. **[Front Desk Narcotic Log; Deposition of Michael Quinn.]**

24. Detective Marc Caporale from the Police Department Bureau of Identification then routinely retrieved the packet with the substance and took it to the Bureau of Identification where such suspected contraband is secured and

-13-

entered in another Narcotics Log. **[Bureau of Identification Narcotic Log; Affidavit of Michael Farrell, Police Department Bureau of Identification.]**

25. The Detectives completed an arrest warrant Application for 68 Day Street on January 18, 2000, signed it, showed it to an Assistant States Attorney, and then submitted it to a Judge of the State Superior Court who in turn approved the warrant. **[Application for Search and Seizure Warrant for 68 Day Street; Search and Seizure Warrant for 68 Day Street; Deposition of Michael Quinn.]**

26. The warrant was executed early the next day, January 19, 2000. **[Deposition of Michael Quinn; Deposition of Beverly Conyers; Case Incident Report of Michael Quinn.]**

27. The only evidence of criminal activity found in the course of the search was a small pink plastic baggie of the type used for small sales and purchases of illegal substances, with residue of what appeared to be marijuana in the baggie. **[Deposition of Michael Quinn; Case Incident Report of Michael Quinn; Receipt of Evidence page which is appended to Search and Seizure warrant; Property Room Receipt for the baggie.]**

28. Present at the time of the initiation of the search were a number of New Haven Police Officers including defendants Quinn and Mauro, the plaintiff Beverly Conyers, three children Ms. Conyers claims are her grandchildren, and another small child for whom she claimed to be babysitting. **[Case Incident Report of the execution of the search warrant; Deposition of Michael Quinn; Deposition of Beverly Conyers.]**

-14-

29.     Defendant Sgt. Hassett eventually stopped by and then routinely arranged for staff at the Yale Child Study Center, an affiliate of Yale University and Yale New Haven Hospital with which the New Haven Police Department has an ongoing professional relationship, to contact Ms. Conyers in order to counsel the children for any distress resulting the execution of the search warrant. **[Sworn Answers of Raymond Hassett to Interrogatories; Deposition of Beverly Conyers.]**

30.  No arrests and no further searches were made at 68 Day Street as a result of the investigation into 68 Day Street, and no arrest warrants were sought as a result of the investigation.

31. Detective Quinn prepared a routine Case Incident Report describing the execution of the warrant. **[Case Incident Report of Michael Quinn.]**

32.  After the search and seizure warrant for 68 Day Street was executed and the Case Incident Report prepared a staff member in the Records Division routinely updated the computer with the actual address, in this instance "68 Day Street," by cross-referencing the CN number on the Case Incident Report and on the earlier computer entry. **[Affidavit of Frank Quadrino; CAD Computer printout.]**

33.  A routine two page record was prepared by Detective Quinn of the amount of monies utilized for the initial purchase by the CI at 68 Day Street, as well as the amount of money paid to the CI after the purchase was field tested. **[Deposition of Michael Quinn; Copy of the two page record.]**

-15-

34. The small plastic baggie purchased at 68 Day Street by the CI, together with its contents, is to this day securely maintained at the Police Department Bureau of Identification. **[Affidavit of Michael Farrell, Bureau of Identification.]**

34. Such suspected contraband would have been forwarded to the State Toxicology Laboratory for further testing only upon request of the States Attorney, and usually only in certain instances where an arrest has been made. **[Deposition of Michael Quinn; Affidavit of Michael Farrell, Bureau of Identification.]**

### Discussion regarding the identity of a "confidential informant."

". . . What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59, ___ S.Ct. ___, ___ L.Ed.2d ___ (1957).

While originally recognized in criminal cases, the privilege applies as well as in civil proceedings. See In re United States, 565 F.2d 19, 22 (2d Cir. 1977).

"Indeed, there is ample authority for the proposition that the strength of the privilege is greater in civil litigation than in criminal." Id., 565 F.2d at ___.

The instant case is a prime example of why the strength of the privilege should be greater in most civil litigation than in criminal.

In this case the plaintiff challenges the legal adequacy of a very detailed search and seizure warrant for evidence of sales of illegal substances, the plaintiff

-16-

essentially relying on the facts that (1) there was miniscule evidence actually found during the subsequent search, i.e., a single empty small plastic baggie of the type used to package small quantities of illegal substances for street sales, and (2) somewhat similar language was included in a subsequent application for a search and seizure warrant for another apartment in the same garden apartment complex.

The absurdities of requiring disclosure of the confidential informant in such circumstances are several.

As in a criminal case,

(1) disclosure of the identity of the confidential informant at issue exposes the informant to physical danger or retribution of other kinds,

(2) the future use of the confidential informant at issue is nullified, and

(3) the willingness of other potential confidential informants to cooperate will be discouraged and inhibited by the demonstration of the inability of the detectives to uphold the promise of confidentiality upon which the cooperation of an informant is generally predicated.

Added to the above referenced problems created by requiring disclosure in a civil case are that (1) the party seeking disclosure of the identity of the confidential informant in a civil case is not exposed to imprisonment or other penalty if the party is not successful in the lawsuit (in contrast to the defendant in a criminal case), and

---

In re United States, supra, 565 F.2d at 22, cites the following cases for this proposition. United States v. Carey, 272 F.2d 492, 493 (5th Cir. 1959); Mitchell v. Roma, 265 F.2d 633, 637-38 (3rd Cir. 1959); Black v. Sheraton Corp., 47 F.R.D. 263, 272 (D.D.C. 1969); Bocchicchio v. Curtis Publishing Co., 203 F.Supp. 403, 407 (E.D.Pa. 1962).

-17-

(2) the lawsuit has been initiated by the very party seeking disclosure of the identity of the confidential informant (in contrast to the initiation of the criminal case by the prosecution).

Thus, while the adverse consequences to the government posed by the threat of disclosure, sometimes referred to as "grey mail," may sometimes be justified as legitimately necessary to the defense in the criminal context due to the potential draconian consequences for the person (the criminal accused) seeking disclosure, in the civil context the such "grey mail" becomes instead a potential **hammer** to pry loose payment of taxpayer's monies whether or not the claims in the lawsuit are meritorious.

**Discussion regarding the Index card sought.** Plaintiff seeks to compel production of an "index card" apparently utilized for requesting from Sgt. Brendan Canning, at the time of the incident at issue the officer in charge of the narcotics unit of the New Haven Police Department, monies to be utilized in a narcotics purchase by a "confidential informant."

The undersigned has spoken to Sgt. Canning and his successors and each has unsuccessfully attempted locate such cards for the time period at issue. I will document that with an Affidavit.

The documenting system has changed at various times since and those older cards were apparently not retained.

However, as indicated above, plaintiff's counsel has been provided with the two page form prepared by Detective Quinn to document monies utilized in the undercover purchase leading to the obtaining of the search warrant for the plaintiff's home.

### Discussion regarding the amounts of money disbursed.

We redacted the amounts of monies disbursed in connection with the undercover narcotics purchase because the person who engaged in the transaction with the undercover informant might well be able to link the amount of money (and, thus, indirectly, the quantity of the purchase) and the date of the purchase with the informant.

No compelling reason has been offered to overturn our reasonable caution in this regard.

### Discussion regarding whether the confidential informant used to make an undercover purchase at the plaintiff's residence is the same confidential informant utilized several weeks later to make another purchase at a neighboring apartment.

To disclose such information, particularly when connected with the amounts of monies (and thus, indirectly, the quantities purchased) and the dates of the purchases may further enable the person who engaged in the transaction with the undercover informant to identify the informant or informants.

### Discussion regarding informant identifying number(s) sought.

The informant identifying number is wholly irrelevant.

-19-

The only potential uses of such numbers by the plaintiff's attorney, the plaintiff or persons associated with the plaintiff, or, indeed, anyone with access to the Court record, are (i) to demonstrate whether or not the same informant was used at the same address and thus cause the same risk of compromising the informant or informants, or (ii) to develop a potential bank of informant identifying numbers which may be utilized in connection with other incidents or arrests to compromise the identity of the informant or informants.

Respectfully submitted,

*/s/ Martin S. Echter*
Martin S. Echter
Deputy Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
Phone: (203) 946-7964
Fax: (203) 946-7942
Fed. Bar No. ct07596
PAGER: 1-860-590-4432

Certificate of Service

I, Martin S. Echter, hereby certify that I have served the foregoing by causing a copy to be FAXED and MAILED, POSTAGE PREPAID, to Attorney Diane Polan and Attorney David Garlinghouse, 129 Church Street, Suite 802, New Haven, CT 06510, this 15 day of April 2004..

*/s/ Martin S. Echter*
Martin S. Echter

-20-